UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KAREN A. GARCEAU,

    Plaintiff,

v.                                                Case No. 6:24-cv-00755-PGB-LHP

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

    Defendant.

---

**DEFENDANT EMBRY-RIDDLE AERONAUTICAL UNIVERSITY, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW**

---

Defendant Embry-Riddle Aeronautical University, Inc. ("ERAU" or the "University") hereby responds to Plaintiff's Motion for Class Certification (Doc. 38) (the "Motion"). For the reasons set forth below, the Motion should be denied.

## INTRODUCTION

This is a copycat class action filed in the aftermath of this Court's dismissal of the *Lopez* action.[1] The plaintiff here, Karen Garceau ("Plaintiff" or "Garceau") worked at the University in the same office as the plaintiff in *Lopez*.[2] Garceau's husband referred Ms. Lopez to her counsel who filed the *Lopez* action and this action.

---

[1] *Lopez v. Embry-Riddle Aeronautical Univ., Inc.*, Case No. 6:22-cv-01580-PGB-LHP (M.D. Fla.) ("*Lopez*").

[2] Deposition of Karen Garceau at 70-71 ("Garceau Dep."), attached as **Exhibit A**.

Garceau Dep. at 74. Large parts of the Complaint and Motion here are copied verbatim from the *Lopez* action.[3] This Court ultimately denied class certification and granted summary judgment to ERAU in the *Lopez* action.[4] As demonstrated below, this action suffers from many of the same fundamental defects as *Lopez*.

As with *Lopez*, the Complaint here is filled with false and conclusory rhetoric alleging that ERAU violated fiduciary duties in connection with the University's 403(b) retirement plan (the "Plan"). When it comes to class certification, however, it is well-established that "Rule 23 ***does not set forth a mere pleading standard***." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).[5] Rather, the plaintiff has the ***burden*** to submit ***evidence*** demonstrating that ***all*** requirements for certification have been met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). In addition to establishing the requirements of Rule 23(a), the plaintiff "must also satisfy ***through evidentiary proof*** at least one of the provisions of Rule 23(b)." *Id.* As the Eleventh Circuit has explained, if there is any doubt, "the party with the burden loses," and class certification should be denied. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).[6]

---

[3] *Compare Garceau* Complaint (Doc. 1) *with Lopez* Complaint (Doc. 1); *compare* Motion (Doc. 38) *with Lopez* Motion for Class Certification (Doc. 43).

[4] *Lopez v. Embry-Riddle Aeronautical Univ., Inc.*, 2024 WL 775213, at *4 (M.D. Fla. Feb. 26, 2024) (denying class certification); *Lopez v. Embry-Riddle Aeronautical Univ., Inc.*, 2024 WL 4769632, at *8 (M.D. Fla. Nov. 13, 2024) (granting summary judgment to ERAU due to plaintiff's lack of standing).

[5] Unless otherwise stated, all emphasis in this opposition memorandum is added, and internal quotations and citations are omitted.

[6] *See also Ohio State Troopers Ass'n, Inc. v. Point Blank Enterps.*, 2021 WL 4427772, at *2 (11th Cir. Sept. 27, 2021) (affirming denial of class certification).

Here, Plaintiff cites her own Complaint and statements of two purported experts that are conclusory, misleading, lack any reliable methodology, and in many instances contradict the record evidence. But only admissible expert testimony may be considered on class certification, and courts must conduct a full Rule 702 analysis when expert testimony is challenged, as it is here. *Lee-Bolton v. Koppers Inc.*, 319 F.R.D. 346, 370 (N.D. Fla. 2017) ("District courts in the Eleventh Circuit must perform a 'full *Daubert*' analysis 'when an expert's testimony is critical to the class certification.'") (quoting *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1258 n.7 (11th Cir. 2014)); *Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011) (failure to undertake a full *Daubert* analysis at the class certification stage was error).[7]

Plaintiff's citation to her own Complaint and unreliable statements by paid experts does not satisfy Plaintiff's burden of proof for class certification. Plaintiff's theories of liability—that ERAU breached its fiduciary duties by (1) paying excessive recordkeeping fees, and (2) using more expensive "share classes" for certain funds—are false and unsupportable. More importantly, for purposes of class certification, Plaintiff lacks Article III standing to assert either of these claims because she suffered *no harm or injury* under either theory.

Like Lopez, Garceau was a new employee with a relatively small balance in her

---

[7] ERAU is filing a Motion to Exclude the statements of Plaintiffs' purported experts under Rule 702. The Court should grant the Motion to Exclude and disregard these experts.

Plan account, and she benefited significantly from the Retirement Plan Committee's adoption of an "asset-based" method of paying recordkeeping fees, which is "fairer and more equitable" than a "per-participant" or "flat fee" basis.[8] Plaintiff alleges that the Plan "should have been able to negotiate" a reasonable recordkeeping fee "anywhere from *$25 per participant to $30* from the beginning of the Class Period." Complaint ¶ 104; Motion at 7. But the evidence shows that Plaintiff actually "*paid less than $17 in recordkeeping fees each year*."[9]

As to Plaintiff's theory that she was harmed by "share classes" of certain funds, "[t]he Committee monitors share classes, including what share classes the Plan is qualified for, to ensure the Plan is offering the most appropriate share class of a particular investment included in the Plan." Young Decl. ¶ 17. Plaintiff's Motion fails to meet her burden to show she was harmed by the "share class" of any fund *in which she was invested*. Because Plaintiff presents no evidence of Article III injury under any of her claims, certification should be denied for this reason alone.

Certification should also be denied because Plaintiff fails the adequacy requirement of Rule 23(a)(4). Plaintiff has virtually no knowledge about her own claims, and her claims are antagonistic to the interests of most class members. Also, a majority of the proposed class pay *less than $30* annually for recordkeeping fees.

---

[8] *See* Declaration of Brandon Young ¶ 25 ("Young Decl."). A copy of the Young Declaration is attached hereto as **Exhibit B**.

[9] *See* Expert Report of Steven Grenadier, Ph.D. (December 16, 2024) at p. 5 ("Grenadier Rep."), copy attached hereto as **Exhibit C**; *see also id*. ¶ 36.

Grenadier Rep. ¶¶ 27-28.  Certification of a class with such a large number of *uninjured* members is improper.  And because Plaintiff does not share injury with those in her alleged class, she fails the typicality requirement of Rule 23(a)(3).  For all these reasons and those set forth below, Plaintiff's Motion for Class Certification should be denied.

**STATEMENT OF FACTS**

     A.    **The ERAU Retirement Plan**

ERAU established the Plan pursuant to Internal Revenue Code Section 403(b) for employees of the University.  ERAU manages the Plan through its Retirement Committee (the "Committee"), which consists of senior executives of the University, including the Chief Financial Officer, General Counsel, Director of Human Resources Operations, the Controller, the Executive Director of Budget and Finance, and Mr. Brandon Young, Chief Human Resources Officer of the University, who Chairs the Committee.  Young Decl. ¶¶ 3, 7.  Employees who work at least 20 hours per week and participate in the Plan receive a contribution or gift from the University equal to 6% of their base pay, and if they choose to contribute, an additional "match" of up to 4.0% (previously 3.5%) of compensation.  *Id*. ¶ 4.  At the end of 2023, the Plan had approximately 5,562 participants and $575,180,245 in assets.  *Id*. ¶ 6.

The Committee takes very seriously its fiduciary duty to manage the Plan in the best interests of the participants, and has retained Captrust Financial Advisors ("Captrust") as its investment and retirement plan advisor.  Young Decl. ¶¶ 8, 10.  Captrust is a registered investment advisor with total assets under management of

$852.2 billion as of 2023.[10] The Committee meets quarterly and diligently monitors all of the Plan's investment options, including share classes, as well as the performance and fees of Teachers Insurance and Annuity Association of America ("TIAA"), the Plan's recordkeeper. Young Decl. ¶¶ 8-9, 17-19, 29-33.

Captrust provides Fiduciary Services to the Plan, *see* Young Decl. ¶ 11 (describing Captrust's Fiduciary Services), but the Committee has not delegated its fiduciary duties to Captrust. It retains decision-making authority and responsibility for implementing all recommendations by Captrust. *Id.* ¶ 12. Prior to each quarterly meeting, Captrust circulates a comprehensive package of information for review and discussion. *See id.* ¶ 29 & Exh. 8. The Committee uses a scoring system to evaluate each investment option in the Plan – measuring quantitative and qualitative criteria, such as risk-adjusted performance, performance related to peer groups, confidence, and investment family items – to determine whether an investment option is in good standing, should be put on the watch list, or should be considered for replacement. *Id.* ¶ 31. Any suggestion that the Committee breached fiduciary duties by failing to monitor Plan investment options is utterly false and unsupportable.

### B. TIAA's Recordkeeping Fees

The Committee monitors TIAA's performance as a recordkeeper, the quality of its services, and its fees. *Id.* ¶ 18. The Committee evaluates all components of TIAA's

---

[10] Expert Report of Steven K. Gissiner (Dec. 16, 2024) ¶ 64 ("Gissiner Rep."), copy attached hereto as **Exhibit D**.

compensation for reasonableness with the assistance of fee benchmarking from Captrust. Young Decl. ¶¶ 18-19 & Exh. 6. Contrary to Plaintiff's allegations, plans can prudently use benchmarking in lieu of RFPs to monitor recordkeeping fees. Gissiner Rep. ¶¶ 75-76. Since 2018, the Committee has successfully negotiated reductions to TIAA's recordkeeping fees on multiple occasions:

| Effective Date of Fee | TIAA Recordkeeping Fee |
| --- | --- |
| 4/1/16 – 12/31/18 | 0.13% (13 bps) |
| 1/1/19 – 3/31/21 | 0.11% (11 bps) |
| 4/1/21 – 6/30/25 | 0.078% (7.8 bps) |
| 7/1/25 | 0.068% (6.8 bps) |

Young Decl. ¶ 23. The Plan's recordkeeping fee is asset-based. The Committee considered and rejected a "per-participant" or "flat fee" approach because it places a disproportionate burden on Plan participants with lower account balances. *Id.* ¶ 25.

### C.   Plaintiff's Participation in the Plan

Plaintiff was employed by the University on October 1, 2020 as a Medical Assistant, and she enrolled in the Plan on November 2, 2020. *Id.* ¶¶ 37-38. Because she initially failed to select a specific investment option, her contributions were placed in the Vanguard Target Date Retirement 2030 fund ("2030 Vanguard Fund"), which was the Qualified Default Investment Alternative ("QDIA") for her age and projected retirement date. *Id.* ¶ 38. Plaintiff was invested in the 2030 Vanguard Fund for about two years. On December 22, 2022, she transferred her funds out of the 2030 Vanguard Fund and invested in ten different funds. *Id.* ¶ 40. Six months later, on June 26, 2023, she resigned her employment with ERAU effective July 10, 2023. *Id.* ¶¶ 37, 42.

Prior to counsel calling her, Plaintiff had no complaints about the Plan, and she never complained to anyone at ERAU about the Plan. Garceau Dep. at 85. Plaintiff has no recollection of being invested in the 2030 Vanguard Fund, *id*. at 63, but she believes it is part of this lawsuit because, based on "[d]iscussion with [her] attorney" (*id*. at 66), "[t]here were better funds to be used" (*id*. at 65), although she could not name any "better funds." *Id*. Plaintiff believes incorrectly that TIAA was charging her a per-participant recordkeeping fee (*id*. at 96), that the University is collecting "[e]xcessive fees … at the direction of Brandon Young" of "$165 per plan participant," (*id*. at 54), and that she was paying $165 in recordkeeping fees each year, based on discussions with her attorney (*id*. at 59). She has no understanding of an asset-based fee (*id*. at 95-96), and no knowledge about why she selected the ten funds that she invested in on December 22, 2022 (*id*. at 124-25). When asked if there were "any better funds than these 10 funds that the plan could have selected?", she responded "I don't know." *Id*. at 129-30.

## ARGUMENT

### I. PLAINTIFF'S MOTION FAILS THE LEGAL STANDARD FOR CLASS CERTIFICATION

"The class action is an *exception* to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "To come within the exception, a party seeking to maintain a class action 'must **affirmatively demonstrate** his compliance' with Rule 23." *Id.* (quoting *Wal-Mart*, 564 U.S. at 350). "The **burden of proof** to establish the propriety of class

certification *rests with the advocate of the class*." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). "[T]he named plaintiffs must have standing, and the putative class must meet each of the requirements specified in [Rule] 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Id.*; *Comcast*, 569 U.S. at 33 (plaintiff must "satisfy through *evidentiary proof*" compliance with Rule 23(b)).

Before certifying a class, a district court must perform a "rigorous analysis" to assure that each prerequisite of Rule 23 is met. *Wal-Mart*, 564 U.S. at 350-51; *Vega*, 564 F.3d at 1266. "Conclusory statements are insufficient to meet the burden of proof on a motion for class certification." *Echevarria v. Expedia, Inc.*, 2024 WL 3429106, at *5 (S.D. Fla. July 16, 2024). "[A]ctual, not presumed, conformance with Rule 23(a) remains … indispensable." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). "[T]he trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Vega*, 564 F.3d at 1266. "[I]f doubts remain about whether the standard is satisfied, the party with the burden loses. All else being equal, the presumption is against class certification …." *Brown,* 817 F.3d at 1233. With respect to expert testimony, the court should perform a full Rule 702 analysis whenever expert testimony is challenged with respect to whether a plaintiff has met the requirements of Rule 23. *See supra* pp. 2-3; ERAU's Motion to Exclude Expert Testimony of Al Otto and Ty Minnich.[11]

---

[11] *See also PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*, 2016 WL 7666179, at *6-10 (M.D. Fla. May 11, 2016) ("This Court … must first analyze Defendants' motion to exclude [Plaintiffs' expert's] opinions before considering the merits of Plaintiffs' class certification motion …."). *Accord Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-17 (7th Cir. 2010); *In re*

## II. CLASS CERTIFICATION SHOULD BE DENIED BECAUSE THE PLAINTIFF LACKS STANDING

"For a class to be certified, *the named plaintiff must have standing* …." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019). To have standing to represent a class, a plaintiff must "satisfy the individual standing prerequisites" and also "be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008). This is an issue "distinct" from whether a plaintiff is adequate under Rule 23 to represent the class. *Mills*, 511 F.3d at 1307.

"The party invoking federal jurisdiction bears the *burden* of establishing standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124-25 (11th Cir. 2019). An "injury in fact" requires an invasion of a legally protected interest that is *concrete* and particularized, *actual*, and not conjectural or hypothetical. *See Spokeo,* 578 U.S. at 338-39. Simply put: "No concrete harm, no standing." *TransUnion v. Ramirez*, 594 U.S. 413, 417 (2021).[12]

---

*Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187-88 (3d Cir. 2015); *Prantil v. Arkema Inc.*, 986 F.3d 570, 575 (5th Cir. 2021).

[12] *See also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) ("a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered

Here, Plaintiff lacks Article III standing because she suffered no harm under her own theory of the case. As to recordkeeping fees, Plaintiff concedes that a fee "anywhere ***from $25 per participant to $30***" would be reasonable. *See* Motion at 7. After enrolling in the Plan, Plaintiff paid the following fees each year:

| Year | Funds | Account Balance on Dec. 31 | Fees from Plaintiff's Statements | Recordkeeping Fee Paid by Plaintiff[13] |
|---|---|---|---|---|
| 2020 | 2030 Vanguard | $844.24 | $0.06[14] | $0.46 |
| 2021 | 2030 Vanguard | $8,061.63 | $4.15[15] | $3.20 |
| 2022 | Multiple | $13,266.01 | $9.95[16] | $7.80 |
| 2023 | Multiple | $19,718.28 | $16.81[17] | $13.22 |
| 2024 | Multiple | $21,831.41 | $20.91[18] | $16.44 |

The *total fees* paid by Plaintiff, as evidenced by her account statements, are shown in the fourth column above, and in the recordkeeping fees shown in the last column, all of which are ***significantly less than $25 per year***.[19] Plaintiff's Motion submits ***no evidence and makes no argument*** to establish that Plaintiff paid any excessive recordkeeping fees in 2020-2022. The Motion addresses only 2023 and relies on

---

the injury that gives rise to that claim").

[13] *See* Grenadier Rep., Exhibit 4 (estimated annualized recordkeeping fees).

[14] Garceau Dep. Exh. 8, at ERAU_017704, copy attached as **Exhibit E**.

[15] Garceau Dep. Exh. 9, at ERAU_017736, copy attached as **Exhibit F**.

[16] Garceau Dep. Exh. 10, at ERAU_017774, copy attached as **Exhibit G**.

[17] Garceau Dep. Exh. 14, at ERAU_017840, copy attached as **Exhibit H**.

[18] Garceau Dep. Exh. 15, at GARCEAU,K. 1, copy attached as **Exhibit I**.

[19] Moreover, "not all of this amount goes toward recordkeeping compensation." Grenadier Rep. at 30 ¶ 38. For example, in 2023, of the $16.81 of total fees, Plaintiff paid approximately $13.22 in recordkeeping fees to TIAA. *Id.* ¶ 38 & Exh. 4.

erroneous expert testimony *to add $40* to the $16.81 of fees shown on Plaintiff's account statement, claiming that Plaintiff "paid **$56** to the recordkeeper in 2023." *See* Motion at 17. This additional $40 is utterly false, misleading, and the purported expert testimony on which it is based violates Rule 702 and should be stricken or disregarded. *See* Motion to Exclude.[20] Plaintiff has no admissible evidence of injury from paying any alleged excessive recordkeeping fees.

Similarly, Plaintiff does not have standing to represent a class based on "share classes" because she has not met her burden of demonstrating any injury from this claim. Plaintiff identifies only three "challenged funds" that she alleges were invested in the wrong share class (Motion at 16), but she provides *no evidence* showing that the Plan was eligible for a different, lower cost share class, or how she was harmed. Simply citing to a chart in the Complaint is not evidence.[21] To the extent Plaintiff relies on the expert opinion of Al Otto, *see* Motion at 5 (citing Otto Report ¶¶ 139-143), that the Plan should have been invested in the R3 share class for the CREF Stock fund, this testimony is erroneous and should be stricken. The Plan did not meet the minimum asset requirements for the R3 share class, and R3 was never available to the Plan during the Class Period. *See* Gissiner Rep. ¶¶ 121-23; Motion to Exclude. Because she has no injury, she has no standing to assert a claim based on share classes.

---

[20] Grenadier Rep. ¶¶ 36-39 & Exh. 4; Gissiner Rep. ¶¶ 108-12.

[21] The Motion at 16 cites to "Otto Report, ¶ 19," which simply states that these three funds were "identified in the Complaint."

"[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 431.

## III. CLASS CERTIFICATION SHOULD ALSO BE DENIED BECAUSE THE PROPOSED CLASS CONTAINS A MAJORITY OF MEMBERS WHO SUFFERED NO INJURY AND LACK ARTICLE III STANDING

In *TransUnion*, the Supreme Court made it clear that "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Id*. The Court did not "address the distinct question whether every class member must demonstrate standing before a court certifies a class." *Id*. at n.4 (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019)). But other courts have appropriately found that "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."[22] This makes sense, in light of *TransUnion*, given the constitutional prohibition against providing relief to class members who lack injury.

Here, the evidence is undisputed that Plaintiff's class definition includes a majority of Plan participants who have suffered ***no injury*** under Plaintiff's theory of liability regarding the Plan's asset-based approach to recordkeeping fees. Grenadier Rep. at pp. 4, 21-24; *id*. at p. 24 ("the majority of Proposed Class members (i.e., those who, like Ms. Garceau herself, paid less than Plaintiff's alleged reasonable fees) *were*

---

[22] *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009); *see also Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) ("In order for a class to be certified, *each member must have standing* and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision.").

*not economically harmed* by the challenged recordkeeping fee arrangement"). Because Plaintiff has the burden of proof with respect to standing and class certification, and because she has failed to meet that burden here, class certification should be denied.[23]

## IV. CERTIFICATION ALSO SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT MET HER BURDEN OF PROVING ADEQUACY UNDER RULE 23(a)(4)

### A. Plaintiff Is An Inadequate Class Representative Because Her Claims Are Antagonistic To And Conflict With The Interests Of Most Other Putative Class Members

Plaintiff's interests conflict with those of other putative class members. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) ("adequacy" analysis encompasses whether any conflicts of interest exist between representative and class). "[A] class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000). Adequacy is defeated when there is a "fundamental" conflict going to the specific issues in controversy. *Valley Drug*, 350 F.3d at 1189. "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Id*.

This Court in *Lopez* denied class certification in part because of the "conflicting economic interest" between Plan participants with small account balances and those

---

[23] *See also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of class certification where "[c]ountless members of [the] putative class could not show any damage" resulting from the defendant's actions).

-14-

with higher balances. *Lopez*, 2024 WL 775213, at *3. The same conflict exists here. The Plan uses an equitable asset-based fee under which the net annual cost to a *majority* of the proposed class is less than $30 per participant, which Plaintiff concedes is reasonable. Motion at 6-7; Complaint ¶ 104. "[T]hese members of the Proposed Class have a conflicting economic interest with other members of the Proposed Class who paid more than $25-$35 per year …." Grenadier Rep. at pp. 4-5, 7, 18, 21, 23-24.

In sum, Plaintiff has a fundamental conflict of interest with a majority of the putative class members. She is therefore precluded from representing a class.

### B. Plaintiff Also Fails Rule 23(a)(4) Because She Lacks Knowledge Sufficient To Adequately Represent A Class

Class certification requires that the named plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. Rule 23(a)(4). "[T]he knowledge and involvement of plaintiff with the suit ... [are] some of the factors relevant to a determination of a plaintiff's adequacy as a class representative." *Sanders v. Robinson Humphrey/Am. Express, Inc.*, 1986 WL 10096, at *2 (N.D. Ga. July 8, 1986). "The class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperienced representatives." *Greenspan v. Brassler*, 78 F.R.D. 130, 133 (S.D.N.Y. 1978).

Plaintiff Garceau has no meaningful understanding of her claims and made no effort to learn about her claims prior to her deposition.[24] Eleven months after filing

---

[24] *See supra* pp. 7-8; Garceau Dep. at 117 ("Q. In preparation for this deposition, did you do any research to determine how much fees you actually paid? A. No, I did not.").

her Complaint, Plaintiff still had no idea what funds she was invested in.[25] Garceau Dep. at 63-65, 151-54. She did not know the recordkeeping fee paid to TIAA (*id*. at 170) and did not have an issue with the fees listed on her Plan statements.[26] She erroneously believes that the Plan is being charged a per-participant recordkeeping fee (*id*. at 96), and that she was paying $165 per year. *Id*. at 59. She admits that she had no complaints about the Plan *until* her attorney first called her. *Id*. at 85.

Plaintiff is also not familiar with the investment options offered in the Plan or how many investments are available to Plan participants. *Id*. at 125-26, 148. She has never reviewed or researched any of the offered investments (*id*. at 127, 130, 147), nor confirmed whether lower cost share classes were available, or whether the Plan qualified to invest in those share classes. *Id*. at 93-94, 171. She is not aware that ERAU has a Committee managing the Plan (*id*. at 167); she does not know the University has a process to select Plan investments, and she does not know whether ERAU has a Committee that monitors investments, what process the Committee used in selecting share classes, or if the Committee monitors recordkeeping fees. *Id*. at 168-69.

---

[25] Plaintiff did not understand that her Plan account was initially invested in a single fund. *Id*. at 64 ("I thought all along that's basically how a retirement account worked. It wasn't investing in one certain thing. There were, like, multiple things under one umbrella."). Nor could she definitively say whether she had transferred her account to ten different funds in December 2022. *Id*. at 63 ("No, I'm not sure, actually. I know that we had a discussion, but I don't really know if it happened.").

[26] *See, id*. at 109-110 ("Q. But you think 6 cents is too high [in reference to fees paid in 2020]? A. Well, I guess, in this case, I wouldn't say 6 cents was too high, no."); *id*. 121-22 ("Q. And, with respect to fees, what does it say that you paid for fees for the year 2022? A. $9.95 Q. And do you have any dispute or disagreement with respect to those fees? A. No.").

Plaintiff could not identify any allegedly imprudent investments in the Plan. *Id*. at 163; *id*. at 65, 129-30. She testified she had no complaints about any of the ten funds she had invested in beginning in December 2022, or any other funds in the Plan. *Id*. at 129. And she did not know whether there were any better funds that the Plan could have selected besides the ten funds in which she had invested. *Id*. at 129-30. Plaintiff's complete lack of understanding of her claims[27] makes her inadequate to serve as a class representative. *See Zimmerman v. Cedars-Sinai Med. Ctr.*, 2024 WL 5274600, at *9-10 (C.D. Cal. Dec. 18, 2024) (plaintiffs were not adequate class representatives where they could not establish a "de minimis familiarity with the facts of the case" and where their depositions "reveal[ed] an almost total lack of familiarity" with the case, the investments in the plan, and plan recordkeeping fees).

### V. CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFF'S CLAIMS ARE NOT TYPICAL OF THE CLAIMS OF THE PUTATIVE CLASS MEMBERS

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Vega*, 564 F.3d

---

[27] *Id*. at 154 ("Q. … And do you have any information why any of these four funds [as alleged in paragraph 66 of the Complaint] would be imprudent investments? A. I do not."); 164 ("Q. Do you believe you have any claim in this lawsuit about Float? A. I don't know."); 171 ("Q. Do you have any evidence that minimum investment requirements are waived for retirement plans like the ERAU plan? A. No, I do not.").

at 1275. "[T]ypicality refers to the individual characteristics of the named plaintiff in relation to the class." *Id*.

Here, Plaintiff does not possess the same interests and has not suffered the same (alleged) injury as the putative class. Courts have routinely declined to certify classes brought by plaintiffs who have not suffered the same injury as the class.[28] As demonstrated above, under Plaintiff's own theory of the case, she has not been injured. She paid less than $25 in recordkeeping fees to TIAA each year; and she was not harmed by any "share class." Because Plaintiff has not met her burden of satisfying the typicality requirement of Rule 23(a)(3), class certification should be denied.

## VI. CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFF HAS FAILED TO MEET HER BURDEN TO SATISFY RULE 23(b)(1)(A)

As a condition to certification, Plaintiff is required to "satisfy ***through evidentiary proof*** at least one of the provisions of Rule 23(b)." *Comcast*, 569 U.S. at 33. Here, however, Plaintiff's Motion submits ***no evidence*** on Rule 23(b) issues, instead parroting the language of Rule 23(b)(1)(A)—that "prosecuting separate actions" purportedly "would create a risk of: (A) inconsistent or varying adjudications ... that would establish incompatible standards of conduct for the party opposing the class." Motion

---

[28] *See, e.g.*, *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (named plaintiffs who "suffered no injury . . . [were] simply not eligible to represent a class of persons who did allegedly suffer injury" because their claims were not typical of other class claims); *Thorne v. Accounts Receivable Mgmt., Inc.*, 282 F.R.D. 684, 695 (S.D. Fla. 2012) (same); *Hunters Capital, LLC v. City of Seattle*, 2022 WL 1449387, at *13 (W.D. Wash. May 9, 2022) (denying class certification because "[p]laintiffs ha[d] not presented evidence that their experiences and injuries [were] reasonably co-extensive with those of the putative class members.").

at 25. The Motion speculates on the potential for separate actions if certification is denied, but provides no evidence that there would be *any* separate actions, let alone "thousands." *Id*. There is no evidence that any other putative class member has ever complained about recordkeeping fees or the Plan's investments being "imprudent."

Moreover, a Rule 23(b)(1) class is a "mandatory" class that does not permit putative class members to opt out. *Spano v. The Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011). The Supreme Court has cautioned strongly against overuse of (b)(1) classes because of their mandatory nature. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841-48 (1999). Accordingly, "the problem of actual and potential conflicts is a matter of particular concern" because the rule "does not allow class members to opt out of the class action." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). "Too liberal an application of the mandatory-class device risks depriving people of one of their most important due process rights: the right to their own day in court." *Spano*, 633 F.3d at 587 (citing *Ortiz*, 527 U.S. at 846).

To be eligible for class certification under Rule 23(b)(1), there must be "identity of interest among all class members." *Spano*, 633 F.3d at 588. Thus, conflicting or disparate interests among class members prohibits certification under Rule 23(b)(1). A claim does not qualify for certification "if the alleged conduct harmed some participants and helped others." *Id*. The Eleventh Circuit has observed that to its knowledge, "no circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350

F.3d 1181, 1190 (11th Cir. 2003).  The record shows there are distinct groups with conflicting interests in Plaintiff's proposed class, and the Plan's asset-based approach to recordkeeping fees benefited the majority of Plan participants.  Moreover, Plaintiff has presented no evidence of any risk of inconsistent adjudications as to individual class members.  Plaintiff has failed to meet her burden of proof for class certification under Rule 23(b)(1)(A), or any other subsection of Rule 23(b).

## CONCLUSION

The Court should enter an order denying the Motion for Class Certification.

Dated:  June 30, 2025

Irma Reboso Solares (FBN 797073)
isolares@carltonfields.com
Sean W. Hughes (FBN 1038714)
shughes@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone:  (305) 530-0050

139892229

Respectfully submitted,

/s/  Markham R. Leventhal
Markham R. Leventhal (FBN 616140)
mleventhal@carltonfields.com
Jason H. Gould (*pro hac vice*)
jgould@carltonfields.com
CARLTON FIELDS, P.A.
1625 Eye Street, NW, Suite 800
Washington, DC 20006
Telephone:  (202) 965-8100

Allison O. Kahn (FBN 496138)
akahn@carltonfields.com
CARLTON FIELDS, P.A.
CityPlace Tower, Suite 1200
525 Okeechobee Boulevard
West Palm Beach, Florida 33401
Telephone:  (561) 659-7070

*Attorneys for Defendant Embry-Riddle Aeronautical University, Inc.*