UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KAREN A. GARCEAU,**   CASE NO. 6:24-CV-00755-PGB-LHP

    **Plaintiff,**

v.

**EMBRY-RIDDLE AERONAUTICAL UNIVERSITY, INC.,**

    **Defendant.**

_____/

**REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**I.     PLAINTIFF HAS ARTICLE III STANDING.**

Defendant inaccurately asserts that Garceau lacks Article III standing because she allegedly paid less than $25 per year in recordkeeping fees based on opinions from Defendant's experts, who dispute data-based calculations from Plaintiff's experts, Al Otto and Ty Minnich. For example, as Otto explains, Garceau paid $16.81 in direct recordkeeping compensation to the Plan's recordkeeper in 2023. Otto Report ¶ 79. But, importantly, Otto clarifies that Garceau's account statements relied upon by Defendant omit the substantial indirect compensation paid via revenue-sharing arrangements—payments that flowed from the investments Garceau held directly to the recordkeeper. *Id.* ¶ 80. In 2023, Garceau held approximately $20,000 in funds that paid, on average, 20 basis points in revenue sharing. *Id.* ¶ 82. That results in roughly $40 in additional indirect compensation. *Id.* ¶ 83. Combined with the direct

compensation, Garceau paid at least $56 to the recordkeeper in 2023. *Id.* ¶ 83. Otto opined that this amount is excessive. *Id.* ¶ 84.

In contrast, Defendant's expert, Steven Grenadier, opined Garceau paid less than $25 for recordkeeping annually. While Mr. Grenadier may disagree with Otto's conclusions, this disagreement merely highlights a "battle of the experts." And as courts in this Circuit have repeatedly held, such expert conflicts are not a valid reason to deny class certification.[1]

Additionally, tracking Judge Covington's recent class certification order in *Huang*, Garceau also has standing because she invested in challenged funds, including the CREF Stock Share Class R2 fund that Otto opined was impudently selected and maintained because a less expensive R3 share class was available.[2] Otto Report ¶¶ 19, 138-141. Defendant does not dispute Garceau was invested in challenged funds.

Defendant's reliance on *Lopez v. Embry-Riddle Aeronautical Univ., Inc.*, Case No. 6:22-cv-01580-PGB-LHP (M.D. Fla.) is misplaced. In fact, the contrast between this case and *Lopez* underscores why standing exists here but was lacking in *Lopez*. In *Lopez*, the plaintiff did not sufficiently demonstrate an actual injury because she had not invested in any of the challenged funds and offered only unsupported assertions of excessive fees. No expert opinions were offered by the *Lopez* plaintiff at class

---

[1] *E.g., Navelski v. Int'l Paper Co.*, 261 F. Supp. 3d 1212 (N.D. Fla. 2017); *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 674 (N.D. Ga. 2009)("As stated previously, the court will not engage in the parties' battle of the experts at the class certification stage.").
[2] *Huang v. TriNet HR III, Inc.*, No. 8:20-CV-2293-VMC-TGW, 2022 WL 13631836, at *4 (M.D. Fla. Oct. 21, 2022)

certification. By contrast, Garceau has offered concrete data—supported by an expert report from Otto—showing, at least, $56 of direct and indirect compensation in 2023 alone. *See* Otto Report ¶¶ 79–88. Garceau has also offered the expert report of Ty Minnich to support her claims. Further, unlike the *Lopez* plaintiff, it undisputed that Garceau invested in multiple challenged funds. *Id.* ¶ 19. Garceau has standing for all the reasons the Court found the *Lopez* plaintiff did not.

## II.     ALL CLASS MEMBERS SUFFERED A COMMON INJURY.

Defendant's reliance on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), to argue that the proposed class includes uninjured participants is misplaced. *TransUnion* involved individualized statutory damages claims under the Fair Credit Reporting Act ("FCRA"), unlike the plan-based fiduciary breach claims brought in this case under ERISA § 502(a)(2), which are representative actions designed to remedy harm to the plan as a whole.[3] Here, every participant in the Plan suffered monetary loss due to Defendant's systemic fiduciary failures, so recovery may be pursued on behalf of the entire Plan. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009).

### A.    Otto Demonstrates Plan-Wide Financial Harm from Excessive Recordkeeping Fees.

Otto's analysis of the Plan's fee structure shows that all participants—regardless of account size—paid fees exceeding market rates, due to an uncapped asset-based pricing model, where recordkeeping compensation rose with plan assets, despite no

---

[3] *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254–56 (2008); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985).

increase in services, causing participants to overpay—with those holding smaller account balances bearing the brunt of the regressive fee model. (Otto Report, pp. 17–21). Otto also identified multiple fiduciary lapses, including, but not limited a failure to conduct a competitive RFP since at least 2016. Otto Report, ¶ 108. Every participant was harmed because the excessive fees drained Plan assets, reducing the Plan's overall value—a classic injury under ERISA § 502(a)(2).

### B. Minnich Confirms the Plan's Fees Were Unreasonable for All Participants.

Plaintiff's expert, Ty Minnich, a former Transamerica executive with decades of experience pricing recordkeeping services, confirmed the Plan paid grossly excessive fees compared to benchmarks. The Plan's per-participant recordkeeping fees reached as high as $75—well above even the median range for similarly sized plans. Minnich Report, p. 11. This figure excludes substantial indirect compensation—via revenue sharing, float, and transaction-based fees—which Defendant neither monitored nor disclosed. *Id.*, pp. 11-14. All participants were harmed, as excessive fees paid from Plan assets diminished the Plan's total value.

### C. Mr. Grenadier's Analysis Ignores the Nature of ERISA Fiduciary Claims and Is Factually Flawed.

Mr. Grenadier's opinion that some participants paid "less than reasonable fees" and thus were uninjured, is flawed, as he ignored indirect forms of compensation and failed to benchmark fees against comparable plans or services. *See generally* Otto Report ¶¶ 74-77; Minnich Report, pp. 15-16. This failure to analyze the complete cost structure, or the prudence of the fiduciary decision-making process that generated

those fees, renders his opinion unreliable. Further, Defendant's reliance on *TransUnion*'s standing analysis is improper, as *TransUnion* did not address ERISA claims, nor § 502(a)(2) claims brought on behalf of a plan. Here, there was economic harm to the Plan and fiduciary misconduct that affected all class members.

### III.   PLAINTIFF MET HER RULE 23(a)(4) ADEQUACY BURDEN.

#### A.   Plaintiff Has No Conflict with Class Members.

Garceau does not have a conflict of interest with other class members. Unlike in *Lopez*, Garceau presented evidence that she paid excessive recordkeeping fees and invested in imprudent Plan options, aligning her interests with the proposed class. She paid at least $56 in 2023 to the Plan's recordkeeper (Otto Report ¶¶ 79–84), which far exceeds reasonable market rates and contradicts Defendant's assertion that Garceau's fees were less than $25. Garceau's claims are typical of the class. No intra-class conflict exists. Participants paid up to $75 per year, which is excessive. These excessive fees were borne by all participants as they diminished the Plan's assets. Minor differences in the amount of losses suffered cannot defeat class certification when a common fiduciary breach caused plan-wide harm.

#### B.   Plaintiff Has Knowledge Sufficient to Adequately Represent a Class.

Ms. Garceau possesses sufficient knowledge of her claims and demonstrated a concrete and personal understanding of the financial injury that underlies her claims. Ms. Garceau has participated in written discovery, produced documents, sat for a deposition, and done everything expected of required of an exemplary class representative. During her deposition she explained that TIAA was collecting

excessive fees (Garceau, Tr. 57:20-24), and that Defendant was "not utilizing the funds that [it] has the power to purchase." (Garceau, Tr. 58:2-8). This is an accurate description of the excessive recordkeeping and improper share class allegations at issue in this lawsuit. She testified that she was concerned about her retirement, that she "doesn't really have any specific knowledge of finance," and that she reached out to TIAA about her concerns. (Garceau, Tr. 62:8–20). Ms. Garceau has consistently expressed a sincere interest in pursuing the litigation and concern for the interests of the class members over her own interests. (Garceau, Tr. 164:10-25). Such actions satisfy adequacy.[4]

## IV. PLAINTIFF'S CLAIMS ARE TYPICAL OF THE PUTATIVE CLASS.

Plaintiff Garceau suffered the same fiduciary breaches and economic injuries as other Plan participants, rendering her claims typical of the class. In 2023 alone, she paid at least $56 in total recordkeeping fees—including indirect compensation through revenue sharing—far exceeding the $25 threshold established by Plaintiff's experts. She was also invested in multiple imprudently retained Plan investment options, directly subjecting her to the same excessive fee structures and underperformance harms as other class members. Her interests are squarely aligned with the class.

---

[4] *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966) (plaintiff with limited financial knowledge was nonetheless permitted to represent a class based on good faith reliance and interest in the outcome); *see also Gamache v. Hogue*, 338 F.R.D. 275, 288 (M.D. Ga. 2021); *In re Wells Real Est. Inv. Tr., Inc. Sec. Litig.*, No. 1:07-CV-862-CAP, 2009 WL 10688777, at *5 (N.D. Ga. Sept. 16, 2009).

.

## V. PLAINTIFF SATISFIES RULE 23(b)(1).

Rule 23(b)(1)(A) does not require proof of actual inconsistent adjudications—only that "prosecuting separate actions *would create a risk*" of inconsistent standards, which is satisfied where, as here, fiduciaries owe uniform duties to the Plan as a whole. Defendant's speculation that some participants may have "benefited" is unsupported by evidence and is irrelevant where the fiduciary breach affected plan assets as a whole. Courts routinely certify ERISA § 502(a)(2) claims under Rule 23(b)(1)(A) because allowing individual actions would force fiduciaries to navigate conflicting obligations to the Plan. Plaintiff's expert reports confirm the fiduciary breaches harmed the Plan uniformly through excessive recordkeeping fees and imprudent investments—any adjudication will necessarily bind the fiduciaries in ways that affect all participants. Plaintiff has met her burden under Rule 23(b)(1).

DATED this 9th day of July, 2025.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**, FL Bar No. 37061
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Direct: (813) 337-7992,
Email: bhill@wfclaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of July, 2025, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system.

*/s/ Brandon J. Hill*